No. 99-173

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 65N

ALEX BERTRAM and KATHERINE BERTRAM,

Plaintiffs and Respondents,

v.

WILLIAM McCREA, SHARON TURBIVILLE.

f/k/a Sharon Bertram, and SCOTT BERTRAM,

Defendants and Appellants.

APPEAL FROM: District Court of the Fifteenth Judicial District,

In and for the County of Sheridan,

The Honorable David Cybulski, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

James P. Healow; Sweeney & Healow, Billings, Montana

For Respondents:

Loren J. O'Toole; O'Toole & O'Toole, Plentywood, Montana

Submitted on Briefs: October 14, 1999

Decided: March 16, 2000

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1.Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2.Sharon Turbiville (Turbiville) appeals the judgment and verdict of the District Court. We affirm.

¶3.We address the following issues:

¶4.Whether the District Court erred in determining that William McCrea and Sharon Turbiville fraudulently induced the Bertrams to sign a satisfaction of judgment.

¶5. Whether the District Court erred in reinstating the original judgment against Turbiville.

Factual and Procedural Background

¶6.Respondents Alex and Katherine Bertram (the Bertrams) are an elderly couple in Augusta, Wisconsin. The Bertrams loaned Turbiville, who was formerly known as Sharon Bertram, and their nephew, Scott Bertram, $20,000 as a down payment for the State Line Club. Turbiville and Scott Bertram gave the Bertrams a promissory note. After making "little or no payments" on the note, Turbiville and Scott Bertram gave the Bertrams a second note in July, 1989. The Bertrams brought a collection action on the second promissory note that resulted in a judgment (hereafter, the original judgment) against Turbiville and Scott Bertram in the amount of $39,467.30 plus interest and costs. Neither Turbiville nor Scott Bertram paid anything toward satisfaction of the judgment, which was a lien against property owned by Turbiville, including the State Line Club. Turbiville and Scott Bertram divorced, and Turbiville became sole owner of the State Line Club.

¶7.Turbiville and William McCrea (McCrea) lived together from approximately 1992 to 1995. She and McCrea used the same attorney, George Radovich (Radovich). Terrie Turbiville, Turbiville's daughter, testified that she overheard Turbiville and McCrea talk several times about their plans to obtain a satisfaction of judgment from the Bertrams. Turbiville knew where the Bertrams lived in Wisconsin.

¶8.Having learned of the Bertrams' whereabouts from Turbiville, McCrea went to Augusta, Wisconsin with a satisfaction of judgment that bore the notation "asharon.sat." McCrea apparently offered the Bertrams a promissory note in the amount of $35,000 in exchange for an executed satisfaction of judgment. McCrea falsely represented to the Bertrams that the satisfaction of judgment would not be filed unless McCrea purchased the State Line Club from Turbiville. McCrea, a convicted felon, either knew that he would not buy the State Line Club or was ignorant of the truth. The Bertrams were unaware that McCrea's representations were false. McCrea delivered the satisfaction of judgment to Radovich; the satisfaction of judgment was immediately filed.

¶9.The Bertrams filed suit against the Defendants and the matter was tried without a jury in January, 1999. The District Court concluded that McCrea, acting in concert with Turbiville, fraudulently induced the Bertrams to sign the satisfaction of judgment. Further, the District Court concluded that Turbiville had been unjustly enriched, to the detriment of the Bertrams, and that as a consequent and proximate injury of the fraudulent misrepresentations, the Bertrams lost a judgment in the amount of $39,467.30 with interest. The District Court set aside the satisfaction of judgment and reinstated the original judgment with the original costs and interest.

## Discussion

¶10. Whether the District Court erred in determining that William McCrea and Sharon Turbiville fraudulently induced the Bertrams to sign a satisfaction of judgment.

¶11.Turbiville argues first[1] that the Bertrams never pled fraud with particularity, as required by Rule 9(b), M.R.Civ.P., and that the Bertrams' action therefore must be dismissed. The Bertrams respond that Turbiville never raised this issue below. Turbiville replies that in a pretrial proposed conclusion of law, she asserted that "[t]here is no particularity in the complaint of the allegedly fraudulent acts by Turbiville" and that she therefore raised the issue before trial commenced.

¶12.Turbiville has misstated the record. Neither party filed proposed findings of fact or conclusions of law before trial; both parties filed proposed findings of fact and conclusions of law after the trial. We conclude that Turbiville's mention of the sufficiency of the Bertrams' fraud pleading in her *posttrial* proposed findings of fact and conclusions of law was untimely and did not preserve the issue for our review. *Compare* Nason v. Leistiko, 1998 MT 217, ¶ 18, 290 Mont. 460, ¶ 18, 963 P.2d 1279, ¶ 18 (recognizing that when party "raises the issue for the first time in a post-hearing memorandum which the district court does not address in its order, the issue has not been timely raised and may not be raised on appeal").

¶13.Turbiville argues further that the Bertrams have not proved all nine elements of fraud. *See* Bartlett v. Allstate Ins. Co. (1996), 280 Mont. 63, 71, 929 P.2d 227, 231 (concluding that a plaintiff alleging fraud must establish nine elements). Turbiville appears to argue that the Bertrams have not established that McCrea made a material false representation that the satisfaction of judgment would not be filed until he purchased the State Line Club. First, we conclude that the statements that McCrea made to the Bertrams regarding his intent to buy the State Line Club and his intent that the satisfaction of judgment not be filed unless he bought the club were a representation.

¶14.Second, we reject Turbiville's contention that the record establishes that McCrea intended to honor his representation to the Bertrams and that he believed his representation was truthful. The record flatly contradicts this assertion. Turbiville's daughter testified that she heard Turbiville and McCrea talk "about how they [McCrea and Turbiville] had --how they had swindled Alex [Bertram] into signing this paper." When McCrea made his representation to the Bertrams, he was a convicted felon who could not buy a liquor license. Moreover, the satisfaction of judgment was filed promptly after its execution although McCrea had not bought the State Line Club. The District Court did not err in finding either that McCrea knew he would not buy the State Line Club and that the satisfaction of judgment would be immediately filed or that he was ignorant of the truth.

¶15.Finally, we conclude that McCrea's representation was clearly material; it led the Bertrams to execute the satisfaction of judgment with McCrea, thereby foregoing their judgment of $39,467.30 plus interest. Turbiville's arguments regarding the materiality of McCrea's representation are wholly unpersuasive.

¶16.Relying on Lee v. Stockmen's Nat. Bank (1922), 63 Mont. 262, 207 P. 623, Turbiville asserts that the Bertrams had no right to rely on McCrea's representation because they

could have prevented the filing of the satisfaction of judgment by retaining possession of the document or by giving it to a closing agent and because they could have ascertained the truth of the representation. Turbiville has misstated *Lee*. Under *Lee*, a party may not rely on a representation when he "has investigated for himself, . . . or [indeed] the means were at hand to ascertain the truth." *Lee*, 63 Mont. at 284, 207 P. at 630.

¶17. Turbiville fails to suggest how the Bertrams could have ascertained for themselves the truth of McCrea's representation. Rather, Turbiville argues without any citation to the record that Alex Bertram knew that McCrea and Turbiville lived together and that Alex Bertram "knew very well at the time that he met with McCrea that he could not believe anything represented to him by Sharon Turbiville." Turbiville points to nothing in the record that would support her assertion that when McCrea made his representation to the Bertrams, Alex Bertram believed that McCrea spoke for Turbiville rather than for himself.

¶18. Turbiville also argues that the Bertrams have failed to prove any "consequent/proximate injury" caused by their reliance on McCrea's representation. Turbiville asserts that the Bertrams' injury will only "occur after they have established that the McCrea note is valueless." Turbiville relies at great length on Denny v. Brissonneaud (1973), 161 Mont. 468, 506 P.2d 77, where the Court determined that the plaintiffs had not shown any damages from fraud in exchanging the equity in their house for an assignment of a note. *Brissonneaud*, 161 Mont. at 472, 506 P.2d at 79. We note that in *Brissonneaud*, the plaintiffs did not exchange a satisfaction of judgment as well as the equity in their house for an assignment of a note. The Court in *Brissonneaud* concluded that "[p]laintiff may recover when he shows that he has sustained some pecuniary damage *or injury by reason of having been put in a position worse than he could have occupied if there had been no fraud*, but he cannot recover where he does not show that he has sustained such damage or injury." *Brissonneaud*, 161 Mont. at 472, 506 P.2d at 79 (emphasis added).

¶19. The Bertrams respond that the promissory note was conditional and that it was not to take effect unless McCrea purchased the State Line Club. The Bertrams also assert that the promissory note was not "consideration for the satisfaction of judgment" and that no evidence in the record supports Turbiville's argument.

¶20. Turbiville's argument is unpersuasive. In reliance on McCrea's representation, the Bertrams surrendered the original judgment and accepted a promissory note whose face value was considerably less than that of the original judgment with interest. In arguing that the Bertrams' injury if any would be limited to the value of the McCrea's promissory note,

Turbiville ignores the legal effect and corresponding value of the original judgment. Thus, the Bertrams did not need to establish that McCrea's note was worthless in order to show that they had been injured. The record clearly establishes that the Bertrams were "put in a position worse than [they] could have occupied if there had been no fraud." *Brissonneaud*, 161 Mont. at 472, 506 P.2d at 79. We conclude that the Bertrams have established a "consequent/proximate injury" caused by their reliance on McCrea's representation. We also reject Turbiville's claim that the District Court incorrectly determined damages, as her argument again incorrectly assumes that the Bertrams' injury if any is limited to the face value of McCrea's note.

¶21.Finally, we note that Turbiville argues that the District Court should have granted her January, 1999 motion to amend her answer to include the affirmative defense that the Bertrams' action was time barred under § 27-2-203, MCA's two year limitation for actions based on fraud. Turbiville argues that the Bertrams had "inquiry notice" when the satisfaction of judgment was filed with the Clerk of Court on December 20, 1993 and that more than two years passed before the Bertrams filed their amended complaint naming Turbiville as a party. Turbiville argues further that the Bertrams' amended complaint, which they filed in February, 1996, did not relate back to their original complaint because although the original complaint named McCrea, Turbiville was first named in the amended complaint in which the Bertrams alleged fraud. Without any citation to authority, Turbiville contends that the Bertrams' fraud claims "are deemed not to relate back to the original complaint" under Rule 15(c), M.R.Civ.P., but rather are deemed filed at the filing of the amended complaint.

¶22.Relying on this Court's decision in Mitchell v. Mitchell (1976), 169 Mont. 134, 545 P.2d 657, the Bertrams respond that the District Court did not abuse its discretion in declining to grant Turbiville's motion to amend her answer. The Bertrams note that although Turbiville's counsel appeared on her behalf in a motion to dismiss in February, 1996, Turbiville waited three years before filing her motion to amend her answer at the start of the trial, offered no argument in her motion why the statute of limitations should bar the Bertrams' fraud claim, and failed to explain why she waited three years to file her motion. Further, the Bertrams argue that they had no notice that McCrea would not purchase the State Line Club until February 15, 1994 when the first payment on his promissory note was due. The Bertrams argue that their amended complaint was filed within two years of their discovery of McCrea's fraud, as required under § 27-2-203, MCA.

¶23.We conclude that the Bertrams' amended complaint was timely filed. The Bertrams had no notice of McCrea and Turbiville's fraud until McCrea's first payment on the note came due. Further, we note that the factual basis for Turbiville's motion to amend her answer was known to her well before the trial. However, in her motion, Turbiville made no mention of the delay in filing the motion. Moreover, had the District Court granted her motion to amend at the start of trial, the Bertrams would have been prejudiced: they would have had no notice and no opportunity to present evidence in response. We conclude that the District Court did not abuse its discretion in denying Turbiville's motion to amend her answer.

¶24. Whether the District Court erred in reinstating the original judgment against Turbiville.

¶25.Turbiville argues that the District Court erred in reinstating the original judgment on principles of equity and unjust enrichment. Turbiville relies on this Court's decision in Maxted v. Barrett (1982), 198 Mont. 81, 87, 643 P.2d 1161, 1164, where the Court determined that "[t]he theory of unjust enrichment and restitution is brought into play when no contract between the parties exists and the court implies a contract in law." Turbiville argues that there is a written contract in which McCrea agreed to pay the Bertrams $35,000 in exchange for the Satisfaction of Judgment. Turbiville argues that the Bertrams therefore had an adequate remedy at law and that the District Court should have enforced the note against McCrea, thereby giving the Bertrams the benefit of their bargain. Turbiville also suggests that in recklessly surrendering their judgment for an unsecured loan, the Bertrams slept on their rights and have unclean hands.

¶26.The Bertrams respond that *Maxted* does not apply because in *Maxted* the parties had a written contract. The Bertrams assert that in the present case, the parties had no express contract. The Bertrams argue further that a contract between them and McCrea would only arise in the event that McCrea purchased the State Line Club.

¶27.The District Court did not find that the parties had a contract and Turbiville has not argued that the District Court clearly erred in failing to find a contract between the parties. We conclude that Turbiville's reliance on *Maxted* is misplaced. In *Maxted* the defendants argued that the plaintiff would be unjustly enriched by the district court's order that the defendants specifically perform their express agreement with the plaintiff. The Court in *Maxted* concluded that the defendants' theory of unjust enrichment did not apply where the parties had an express contract that could be enforced. We further concluded that in a

specific performance action, "the contractual terms must be sufficiently certain so the court can compel performance." *Maxted*, 198 Mont. at 87, 643 P.2d at 1164 (citations omitted).

¶28.In the present case, although Turbiville claims that there was an "express" contract, she does not identify it in the record, she does not argue that the District Court erred in failing to find that there was an express contract, and she does not assert that the alleged express contract was "sufficiently certain so the court can compel performance." *Maxted*, 198 Mont. at 87, 643 P.2d at 1164 (citations omitted). The record establishes that by fraudulently inducing the Bertrams to execute a satisfaction of judgment, Turbiville unjustly benefitted from the satisfaction of a judgment that was never paid. We conclude that the District Court did not abuse its discretion in reinstating the original judgment.

¶29.The judgment and order of the District Court are affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

1. McCrea was apparently never served in this action.