
DA 06-0803

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 246

PARK COUNTY CONCERNED CITIZENS,
TIMOTHY WATSON, HOWARD CARTER,
MIKE ADKINS, CHARLES DONOVAN, and
UPPER YELLOWSTONE BUILDERS ASSOCIATION,

        Plaintiffs and Appellants,

  v.

TARA DePUY,

        Defendant and Appellee.

APPEAL FROM:    District Court of the Sixth Judicial District,
                   In and For the County of Park, Cause No. DV 06-71
                   Honorable Richard A. Simonton, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Karl Knuchel, Attorney at Law, Livingston, Montana
                Mark J. Hartwig, Attorney at Law, Livingston, Montana

        For Appellee:

                Bryan P. Wilson and Steven R. Milch, Crowley, Haughey, Hanson, Toole &
                Dietrich, PLLP, Billings, Montana

                                Submitted on Briefs:  July 25, 2007

                                      Decided:  July 15, 2008

Filed:

                       _____
                                Clerk

Justice John Warner delivered the Opinion of the Court.

¶1    The Appellants, Park County Concerned Citizens, et al. (collectively, PCCC), sued Tara DePuy, alleging she had committed various ethical violations in her role as Park County Attorney. The Sixth Judicial District Court, Park County, granted summary judgment for DePuy and also awarded DePuy sanctions. PCCC appeals.

¶2    We restate and address the issues as follows:

¶3    Issue 1: Did the District Court correctly grant summary judgment to DePuy, holding that she did not violate § 2-2-105(3), MCA?

¶4    Issue 2: Did the District Court correctly grant summary judgment to DePuy, holding that she did not violate § 2-2-121(5), MCA?

¶5    Issue 3: Did the District Court err in denying PCCC's motion for sanctions under M. R. Civ. P. 11?

¶6    Issue 4: Did the District Court err in granting DePuy sanctions against PCCC?

**BACKGROUND**

¶7    In 1995, DePuy was elected Park County Attorney. She continued in that position until July 1, 2005. At that time, as part of a reorganization of her office, she resigned as County Attorney and began working in a newly created position as a part-time Park County Attorney, doing civil work. In this new position, DePuy was responsible for advising the Park County Commissioners and the county planning staff on various legal issues, including land use and development issues.

¶8    During the time she was a Civil County Attorney, DePuy also served in a volunteer capacity as a board member of a group named Corporation for the Northern Rockies (CNR). CNR is a non-profit organization which seeks to promote sustainable development and to

2

protect Montana's landscape. According to PCCC, CNR seeks to stop development of rural land. CNR furthers its objectives through encouraging voluntary actions by landowners. It is undisputed that CNR has not engaged in any lobbying before the Park County Commissioners nor has it engaged in any litigation with or against Park County.

¶9 In February 2005, PCCC's attorneys wrote a letter to the Montana Attorney General raising concerns about the legality of hiring DePuy in the new Civil County Attorney position. They then informed a local reporter about their letter to the Attorney General, leading to coverage in two local newspapers about the allegations against DePuy. In March, the Attorney General's office declined PCCC's request for an investigation, stating that it had no authority over the Park County Commissioners.

¶10 PCCC's counsel also contacted the Park County Attorney who had replaced DePuy and requested an investigation of her allegedly unethical actions leading to her hiring as Civil County Attorney. The County Attorney referred the matter to the Yellowstone County Attorney's office. The investigation by the Yellowstone County Attorney's office concluded that neither DePuy nor the Park County Commissioners had engaged in any wrongdoing. Specifically, the attorney conducting the investigation found that Park County's hiring of DePuy was in compliance with county policies and that DePuy did not commit any ethical violations because, when she resigned as County Attorney and immediately was hired as Civil County Attorney, she remained employed by Park County and continued to represent the interests of the county.

¶11 PCCC's attorneys then prepared a proposed district court complaint which did not name plaintiffs. The draft complaint was circulated among an unspecified group of people

3

prior to a May 24, 2006, meeting. DePuy obtained a copy of this document. The names of the plaintiffs were later inserted into an identical complaint form. On June 1, 2006, PCCC filed the present suit against DePuy, alleging two ethical violations. First, the complaint asserted that DePuy improperly took advantage of her position as County Attorney to create a new Civil County Attorney position and then become employed in that position, in violation of § 2-2-105(3), MCA. Second, the complaint alleged that it was unethical and in violation of § 2-2-121(5), MCA, for DePuy to render legal opinions on land use issues while serving on the board of CNR.

¶12 PCCC served DePuy with extensive discovery requests. For example, PCCC demanded that she list every entity with which she had been involved over the past decade, that she give details about her involvement in and relationship to all such organizations, and that she provide copies of every document related to those entities that was in her possession or available to her. The interrogatories demanded details of every real estate transaction in which she had a direct or indirect interest during the prior decade. PCCC also included an interrogatory demanding the details of all work DePuy had performed as Civil County Attorney and requested extensive documentation, including email, telephone logs, time sheets, pay stubs, and other documents generated or received by DePuy as Civil County Attorney.

¶13 On July 18, 2006, DePuy filed a motion for summary judgment on both counts of the complaint, a motion for a protective order staying discovery, and a motion for sanctions against PCCC under § 2-2-144(3), MCA, and M. R. Civ. P. 26(g). PCCC did not respond to her motion to stay discovery, but responded to her motion for summary judgment by moving

4

for sanctions under M. R. Civ. P. 11. PCCC argued that DePuy violated Rule 11 by stating, allegedly with no factual basis, that PCCC's attorneys had "shopped around" for plaintiffs when they circulated the complaint with no listed plaintiffs.

¶14 Following a hearing on the motions for summary judgment and sanctions, the District Court granted DePuy's motion, ordering that she was entitled to summary judgment in her favor on both counts of PCCC's complaint. The District Court's decision rendered moot her motion to stay discovery. The District Court also denied PCCC's request for Rule 11 sanctions against DePuy and granted her motion for sanctions in the form of her reasonable attorney fees. In its order, the District Court stated: "This lawsuit seems to have been ill-conceived," and some of the evidence "suggests that this is, in fact, a personal attack on Ms. DePuy filed because of suspicion and speculation, but without evidence of wrongdoing."

## STANDARD OF REVIEW

¶15 We review de novo a district court's ruling on a motion for summary judgment. *Xu v. McLaughlin Research Inst. for Biomedical Sci., Inc.*, 2005 MT 209, ¶ 18, 328 Mont. 232, ¶ 18, 119 P.3d 100, ¶ 18. Summary judgment is appropriate when the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. M. R. Civ. P. 56(c). The burden then shifts to the non-moving to party to prove by more than "mere allegations or denials" that there is a genuine issue of fact remaining. M. R. Civ. P. 56(e).

¶16 This Court reviews a district court's imposition of sanctions for abuse of discretion. *Vermeer of Wash., Inc. v. Jones*, 2004 MT 77, ¶ 7, 320 Mont. 435, ¶ 7, 87 P.3d 516, ¶ 7. We review de novo a district court's determination whether a pleading, motion or other paper

5

violates Rule 11. We review a district court's findings of fact underlying that conclusion to determine whether they are clearly erroneous. *Byrum v. Andren*, 2007 MT 107, ¶ 19, 337 Mont. 167, ¶ 19, 159 P.3d 1062, ¶ 19.

**DISCUSSION**

¶17 *Issue 1: Did the District Court correctly grant summary judgment to DePuy, holding that she did not violate § 2-2-105(3), MCA?*

¶18 Section 2-2-105(3), MCA, provides:

> A public officer or public employee may not, within 12 months following the voluntary termination of office or employment, obtain employment in which the officer or employee will take direct advantage, unavailable to others, of matters with which the officer or employee was directly involved during a term of office or during employment. These matters are rules, other than rules of general application, that the officer or employee actively helped to formulate and applications, claims, or contested cases in the consideration of which the officer or employee was an active participant.

In the Preamble to a 1995 amendment to the statute, the Montana Legislature noted that the Montana Constitution intends to "prohibit[] conflict between public duty and private interest for . . . all state and local government officers and employees." 1995 Mont. Laws 3251.

¶19 PCCC asserts that DePuy violated § 2-2-105(3), MCA, by helping the Park County Commissioners create the new Civil County Attorney position and by then resigning as County Attorney to accept the new position. We agree with the District Court that there is no violation of the statute because DePuy has remained employed by the same public employer. She now has the duty to advise the commissioners and represent Park County, which is the same duty she had when she was County Attorney. As the Preamble to the 1995 amendment recognized, the Constitution and this statute are intended to prevent public

6

employees from taking advantage of a government position to benefit themselves when they leave their prior employment. PCCC has not come forward with any evidence that would tend to show that when DePuy was hired as Civil County Attorney she somehow gained an advantage, unavailable to others, over some matter handled by Park County or the Park County Attorney's office.

¶20 PCCC also claims the process by which DePuy was hired violated Park County policy. However, it did not offer any evidence of what the County's policies are and failed to specify what policies may have been violated. PCCC offers nothing more than speculation that there was a violation of the County's policies. We agree with the District Court and with the report by the Yellowstone County Attorney that there is no support for PCCC's argument that hiring DePuy as a Civil County Attorney violated Park County policy.

¶21 *Issue 2: Did the District Court correctly grant summary judgment to DePuy, holding that she did not violate § 2-2-121(5), MCA?*

¶22 PCCC claimed that DePuy violated § 2-2-121(5), MCA, because she was a board member of CNR, an organization which focuses on land use issues. This statute provides that:

> A public officer or public employee may not participate in a proceeding when an organization, other than an organization or association of local government officials, of which the public officer or public employee is an officer or director is:
> (a) involved in a proceeding before the employing agency that is within the scope of the public officer's or public employee's job duties; or
> (b) attempting to influence a local, state, or federal proceeding in which the public officer or public employee represents the state or local government.

7

Section 2-2-121(5), MCA. When interpreting a statute, we first look to the plain language to determine its meaning. *State v. Letasky*, 2007 MT 51, ¶ 11, 336 Mont. 178, ¶ 11, 152 P.3d 1288, ¶ 11. Our task "is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA.

¶23 DePuy provided uncontradicted evidence that CNR was not, and had not been, "involved in a proceeding" in Park County, and that CNR was not, and had not been, "attempting to influence" a proceeding in Park County. PCCC offered nothing to dispute DePuy's evidence. They simply argue that there is an "inherent" conflict in DePuy serving both as a County Attorney handling civil matters and acting as a board member of CNR. This argument, that DePuy has some sort of an inherent conflict, has no basis in the statute. Section 2-2-121(5), MCA, as applied to DePuy under the uncontested facts of this case, prohibits her from participating in a proceeding, or attempting to influence a proceeding, in which both CNR and Park County are involved. PCCC offered nothing to demonstrate that anything DePuy has done would violate § 2-2-121(5), MCA.

¶24 *Issue 3: Did the District Court err in denying PCCC's motion for sanctions under M. R. Civ. P. 11?*

¶25 PCCC asserts that DePuy violated Rule 11 by alleging in her motion for summary judgment that PCCC's attorneys had "shopped around" for plaintiffs by circulating the complaint without naming plaintiffs. Rule 11 of the Montana Rules of Civil Procedure provides in part:

8

The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law . . . and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation . . . . If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction . . . .

¶26 PCCC claims DePuy's statement that the attorneys had "shopped around" for plaintiffs amounted to a baseless allegation that they had committed an ethical violation by financing a lawsuit when they had no clients. The District Court's findings which underlie its determination that DePuy's allegation was reasonable are not clearly erroneous, considering the copy of the complaint she received prior to PCCC filing this suit. Nothing in the record suggests that DePuy made the statement for any improper purpose. The District Court did not err when it denied PCCC's request for sanctions.

¶27 *Issue 4: Did the District Court err in granting DePuy's request for sanctions against PCCC?*

¶28 Along with her motion for summary judgment, DePuy moved for sanctions against PCCC pursuant to § 2-2-144(3), MCA, and M. R. Civ. P. 26(g). Section 2-2-144(3), MCA, permits a district court to impose attorney fees against a party alleging a statutory ethical violation by a public employee if it determines there was no violation by the employee. The statute also permits sanctions "if the court determines that the action was frivolous or intended for harassment." Section 2-2-144(3), MCA.

¶29 The District Court found that PCCC's lawsuit amounted to a personal attack against DePuy and that the lawsuit had been "ill-conceived" from the beginning. This finding is

9

supported by the series of actions PCCC and their attorneys took, from writing to the Attorney General and publicizing the allegations in the local press to their insistence on pursuing this lawsuit against DePuy despite a lack of support for their legal positions. We conclude that the District Court did not abuse its discretion when it found that DePuy was entitled under § 2-2-144(3), MCA, to receive sanctions in the form of attorney fees.

¶30 Rule 26(g) of the Montana Rules of Civil Procedure permits a district court to impose sanctions, including reasonable attorney fees, if a discovery request is "interposed for any improper purpose, such as to harass" or is "unreasonable or unduly burdensome or expensive, given the needs of the case, the discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation."

¶31 After a review of the discovery requests propounded by PCCC, the District Court found that they violated M. R. Civ. P. 26(g) because the discovery requests were harassing, unreasonable, and unduly burdensome. The District Court also found that the discovery requests attempted to obtain personal and confidential information that was unrelated to the case, including the request for information about every real estate transaction in which DePuy had been involved for a decade. These findings are supported by the record. In addition, the record supports the District Court's finding that the discovery requests complained of were unduly broad as they required DePuy to produce documents that were irrelevant to the case. The District Court did not abuse its discretion when it concluded that PCCC's requests were propounded in violation of M. R. Civ. P. 26(g).

¶32 DePuy moves for attorney fees on appeal. When a prevailing party is entitled to statutory attorneys fees at the district court's discretion and has incurred further fees and

costs in successfully defending an appeal, that party may be entitled to attorney fees that result from defending the appeal. *Sletteland v. Roberts*, 2003 MT 17, ¶¶ 22-23, 314 Mont. 76, ¶¶ 22-23, 64 P.3d 979, ¶¶ 22-23. Because the District Court awarded DePuy's fees based on the statutory authority of § 2-2-144(3), MCA, we determine that she shall have her attorney fees incurred on appeal. We remand to the District Court for a determination of a reasonable amount of attorney fees and costs incurred by DePuy in the present appeal. Such fees and costs shall be assessed against the plaintiffs herein and judgment entered accordingly.

**CONCLUSION**

¶33 The undisputed facts show that DePuy did not violate either § 2-2-105(3), MCA, or § 2-2-121(5), MCA. She is entitled to judgment in her favor as a matter of law. The District Court did not abuse its discretion in denying PCCC's motion for Rule 11 sanctions. Nor did it abuse its discretion in awarding DePuy her attorney fees. DePuy is further entitled to her attorney fees incurred in defending this appeal.

¶34 The judgment of the District Court is affirmed. This case is remanded for a determination of the amount of DePuy's reasonable attorney fees and costs on appeal, which are to be included in the judgment.

/S/ JOHN WARNER

We Concur:

11

/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE
/S/ BRIAN MORRIS